UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MICHAEL E.,[1] | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | ) No. 1:21-cv-03091-TWP-MG |
| | ) |
| KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration, | ) ) ) |
| | ) |
| *Defendant.* | ) |

### REPORT AND RECOMMENDATION

In October 2019, Plaintiff Michael E. filed for social security disability insurance benefits ("DIB") under Title II and protectively filed for supplemental security income benefits ("SSI") under Title XVI from the Social Security Administration ("SSA"), alleging a disability onset date of May 26, 2018.[2] [*See* Filing No. 7-8 at 2-16; Filing No. 7-9 at 2-24.] Michael E.'s applications[3] for DIB and SSI for the period starting May 26, 2018 were initially denied on March 3, 2020, [Filing No. 7-6 at 4-21], and on reconsideration on June 24, 2020. [Filing No. 7-6 at 25-38.]

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

[2] Michael E. originally alleged an onset date of May 23, 2018, but the ALJ found that he could not allege a period of disability on or before May 25, 2018—the date of the decision denying a prior application for benefits. [Filing No. 7-3 at 5.] Therefore, the ALJ treated his alleged onset date as May 26, 2018. [Filing No. 7-3 at 5.] Michael E. does not contest this finding on appeal, so the undersigned will treat May 26, 2018 as his alleged onset date. [*See* Filing No. 9 (acknowledging May 26, 2018 as the alleged onset date).]

[3] Michael E. previously received DIB benefits during 2012 through 2015 following a diagnosis of laryngeal cancer. [*See* Filing No. 7-9 at 3-4.]

1

Administrative Law Judge Monica LaPolt (the "ALJ") held a hearing on April 22, 2021 at which Michael E. testified. [Filing No. 7-4 at 2-23.] The ALJ issued a decision on June 8, 2021, concluding that Michael E. was not entitled to receive benefits. [Filing No. 7-3 at 2.] The Appeals Council denied review on October 29, 2021. [Filing No. 7-2 at 2-6.] On December 23, 2021, Michael E. filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C. § 405(g). [Filing No. 1.]

The Court referred this matter to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b). [Filing No. 14.] For the following reasons, the undersigned recommends that the Court **REMAND** the decision of the ALJ for further proceedings.

I.
STANDARD OF REVIEW[4]

"The [SSA] provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, __U.S.__, 139 S. Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, the Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Id.* For purposes of judicial review, "substantial evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v.*

---

[4] The regulations governing disability determinations for benefits under Title II and Title XVI are identical in virtually all relevant respects unless otherwise noted.

*Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). The Court does "determine whether the ALJ built an 'accurate and logical bridge' between the evidence and the conclusion." *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)). The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After step three, but before step four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses

the RFC at step four to determine whether the claimant can perform his or her own past relevant work and if not, at step five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v). The burden of proof is on the claimant for steps one through four; only at step five does the burden shift to the Commissioner. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ's decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). "An award of benefits is appropriate only where all factual issues have been resolved and the 'record can yield but one supportable conclusion.'" *Id.* (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

## II.
### BACKGROUND

Michael E. was 44 years old on May 26, 2018—the date of his alleged onset of disability—and has a high-school education. [Filing No. 7-3 at 13.] He has prior work experience as a shop supervisor and plumber's apprentice. [Filing No. 7-3 at 12.] Michael E.'s original applications allege that he can no longer work because of the following conditions: neuropathy throughout the body, stenosis of cervical and lumbar spine, diabetes, and glaucoma. [Filing No. 7-9 at 16.] The ALJ followed the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4) and concluded that Michael E. was not disabled. Specifically, the ALJ found as follows:

- At Step One, Michael E. had not engaged in substantial gainful activity[5] during the period at issue. [Filing No. 7-3 at 8.] The ALJ further found that, for purposes of his DIB claim, Michael E. met the insured status through September 30, 2020. [Filing No. 7-3 at 7.]

- At Step Two, Michael E. had the following severe impairments: degenerative disc disease, complex regional pain syndrome, and obesity. [Filing No. 7-3 at 8.]

- At Step Three, Michael E. did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. [Filing No. 7-3 at 8-9.]

- After Step Three but before Step Four, Michael E. had the RFC "to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: occasional ramps and stairs; no ladders, ropes, or scaffolds; occasional balance, stoop, kneel, crouch, and crawl; occasional foot controls bilaterally; and occasional slippery uneven surfaces." [Filing No. 7-3 at 9.]

- At Step Four, Michael E. could not perform any of his past relevant work. [Filing No. 7-3 at 12.]

- At Step Five and relying on the testimony of a vocational expert ("VE") and considering Michael E.'s age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that he could perform, such as cleaner, office helper, and counter attendant. [Filing No. 7-3 at 13-14.]

### III.
### DISCUSSION

Michael E. raises two arguments on appeal: (1) the ALJ erred by deeming certain recent impairments with his feet to be "non-severe" and not accounting for limitations posed by his feet impairments in the RFC; and (2) under SSR 16-3p, the ALJ did not provide sufficient analysis and

---

[5] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

reasoning to support her conclusion that Michael E.'s statements about the intensity, persistence, and limiting effects of his symptoms were not entirely supported by the record.

### A.  Michael E.'s Feet Impairments

In addition to the severe impairments listed above, the ALJ also found that Michael E. has certain non-severe impairments:  acute bronchitis, acute kidney injury, hyponatremia (low sodium), diabetes, diabetic neuropathy, foot ulcer, tinea pedis (athlete's foot), ankle contractures, and hammer toes.  [Filing No. 7-3 at 8.]  As for Michael E.'s foot ulcers and tinea pedis, the ALJ found that those conditions did not meet the durational requirement because they are not expected to last 12 months or more with proper treatment.  [Filing No. 7-3 at 8.]  And, the ALJ concluded that "[t]here is no indication that diabetic peripheral neuropathy, ankle contractures, or hammer toes have more than minimally affected [Michael E.'s] ability to function."  [Filing No. 7-3 at 8.]

In this appeal, Michael E. takes issue with the ALJ's finding regarding his foot ulcer, tinea pedis, and peripheral neuropathy.  [Filing No. 9 at 14.]  More specifically, Michael E. argues that the ALJ erred by not including any limitations for these constellation of feet impairments in the RFC and erroneously "dismissed the severity of the ulcerations" by "single handedly presum[ing] they are not expected to last 12 months."  [Filing No. 9 at 14.]  He faults the ALJ for not providing an explanation "as to why [she] found [Michael E.] capable of consistently standing and/or walking at least six hours of an eight hour workday with open wounds on both feet and peripheral neuropathy."  [Filing No. 9 at 16-17.]  Michael E. acknowledges that less than 12 months elapsed between his foot ulcer treatment, which began in earnest in September 2020, and the ALJ's decision in June 2021, but he says that under Listing 8.04 (chronic infections of the skin or mucous membranes), he need only establish "extensive fungating or extensive ulcerating skin lesions that persist for at least three months despite continuing treatment as prescribed."  [Filing No. 9 at 15

(quoting Listing 8.04).] But, in any event, Michael E. says that regardless of whether he met the criteria for Listing 8.04, the ALJ erred by "not discuss[ing] whether there are any functional limitations resulting from [his] foot ulcers." [Filing No. 9 at 20.]

The Commissioner responds that contrary to Michael E.'s assertions, even though the ALJ found Michael E.'s feet impairments to be non-severe, the ALJ did consider Michael E.'s foot impairment "throughout the rest of the decision." [Filing No. 12 at 7.] The Commissioner notes that the ALJ recited Michael E.'s hearing testimony about his feet issues and further discussed the results of a range of motion examination performed in January 2020 in connection with his disability benefits applications. [Filing No. 12 at 8 (citing Filing No. 7-16 at 72-74).] The Commissioner also cites the ALJ's observation that Michael E. had not been prescribed any assistive devices, nor did he receive physical therapy. [Filing No. 12 at 9.] Finally, the Commissioner notes that in considering the opinions of the reviewing agency consultants, the ALJ found that Michael E. was less restricted in walking and standing than the limitations found by the consultants, finding that the longitudinal records did not support the more restrictive limitations. [Filing No. 12 at 9-10.]

In reply, Michael E. reiterates his Listing 8.04 argument, and notes that ALJ and the Commissioner did not address the medical records regarding his feet ulcers that began in September 2020 and instead relied on examinations finding normal gait that pre-date September 2020. [See Filing No. 13 at 2.] Michael E. also argues that it was improper for the ALJ to rely on the absence of assistive devices to determine standing and walking limitations. [Filing No. 13 at 5.]

At Step Two, "as long as the ALJ determines that the claimant has one severe impairment, the ALJ will proceed to the remaining steps of the evaluation process. Therefore, the [S]tep [T]wo

7

determination of severity is merely a threshold requirement." *Curvin v. Colvin*, 778 F.3d 645, 648 (7th Cir. 2015) (cleaned up). Thus, any error in categorizing an impairment as "severe" versus "non-severe" is harmless so long as the ALJ has found at least one severe impairment that warrants proceeding beyond Step Two of the sequential evaluation. *Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012). In developing the RFC, the ALJ must include limitations posed by non-severe impairments, and "[a] failure to fully consider the impact of non-severe impairments requires reversal." *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010) (citations omitted).

An RFC represents "the maximum a person can do—despite his limitations—on a regular and continuing basis, which means roughly eight hours a day for five days a week." *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013) (internal quotation marks omitted). In determining an individual's RFC, "the ALJ *must* evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Villano*, 556 F.3d at 563 (emphasis added). An ALJ must provide more than a "cursory analysis" for rejecting limitations alleged by a claimant. *Id.* That is so because the ALJ must build an "accurate and logical bridge" between the evidence and the result. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015).

Here, the ALJ failed to properly analyze the medical evidence regarding Michael E.'s feet impairments. One obvious flaw in the ALJ's reasoning is one of timing. In assessing Michael E.'s ability to stand and walk, the ALJ relied on examinations and medical evidence that pre-dates September 2020 (*i.e.*, when Michael E. began having significant issues with his feet).[6] For

---

[6] The Court observes that medical records addressing significant issues regarding Michael E.'s feet start shortly before the date last insured (September 30, 2020). While timing may impact his DIB claim, Michael E. also protectively filed for SSI benefits under Title XVI. The ALJ did not distinguish between the two applications for benefits in the decision.

example, in rejecting a standing/walking limitation, the ALJ cited physician notes from his pain management doctor predating the September 2020 hospitalization and the results of a consultative examination conducted in January 2020. [Filing No. 7-3 at 12.]

The other flawed aspect of the ALJ's reasoning is the absence of any real discussion of the medical evidence related to Michael E.'s feet conditions, which includes:

- Medical records from Franciscan Health related to Michael E.'s hospitalization from September 18-19, 2020 for necrotic foot ulcers and cellulitis, during which physicians performed a debridement of the wound on his foot and administered antibiotics. [*See* Filing No. 7-22 at 2-7.]

- November 2020 physician notes from a primary care provider noting bilateral foot ulcers with "significant onychomycoses of all nails of bilateral feet" and "an ulceration underneath the base of the right big toe but also on the heel of bilateral feet and then 1 on the third digit of the right foot." [Filing No. 7-31 at 4.]

- January 2021 notes from a podiatrist observing bilateral ankle contracture, chronic ulcer, hammer toes, diabetic neuropathy and tinea pedis. [Filing No. 7-31 at 34.] Notes indicate the podiatrist debrided all of Michael E.'s toenails and further performed an excisional debridement of his ulcer into the "level of subcutaneous tissue." At that time, the podiatrist recommended diabetic shoes. [Filing No. 7-31 at 35.]

- An April 8, 2021 podiatric visit during which all of his toenails were debrided and a lesion on his left foot was also debrided. [Filing No. 7-35 at 29.]

- An April 15, 2021 podiatric visit during which additional debriding was performed on the lesion on the left foot. [Filing No. 7-35 at 40.] The podiatrist observed Michael E. to have "gait abnormalities with an apropulsive gait pattern" with bilateral "early heel lift." [Filing No. 7-35 at 40.]

The only discussion provided by the ALJ about all this evidence was that "his podiatrist noted apropulsive gait pattern and early heel left, [but] the record reflects no use of, or any prescriptions for any assistive devices," and that other than the apropulsive gait, "claimant's gait was otherwise normal and 'did not appear antalgic,'" with "appropriate shoe gear" recommended. [Filing No. 7-3 at 11-12.] The ALJ did not discuss the evidence in any detail. Certainly, the ALJ did not

sufficiently address this evidence in concluding that Michael E., with an ongoing history of continuing open foot ulcers, had no limitation in his ability to stand and walk.

In sum, the record is replete with evidence of Michael E.'s recent issues with feet impairments, but the ALJ's decision does not describe, analyze, or summarize the medical evidence or symptoms on this front at all, and instead offers only a conclusory observation about Michael E.'s gait. See *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) ("[A]lthough the ALJ need not discuss every piece of evidence in the record, he must confront the evidence that does not support his conclusion and explain why it was rejected.") (quoting *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004)). Instead of addressing the feet issues, the ALJ appeared to be myopically focused on Michael E.'s degenerative disc disease when determining his RFC and his ability to stand and walk. [*See, e.g.*, Filing No. 7-3 at 10-11 (discussing results of MRI of spine and pain management but not hospitalization and treatment for ulcers on feet).] The Court is unable discern from the ALJ's decision whether the ALJ considered the evidence regarding Michael E.'s ongoing feet impairments, including the ulcers on his feet, and therefore remand is warranted.

In light of the above, the undersigned **RECOMMENDS** the Court **REVERSE and REMAND** for the ALJ to fully consider the evidence and any limitations posed by Michael E.'s feet impairments. On remand, the ALJ further should address whether Michael E.'s feet impairments should be considered in connection with a Listing.

### B. Subjective Symptom Evaluation

Michael E. also challenges the ALJ's subjective symptom evaluation. [Filing No. 9 at 22.] Michael E. says that the ALJ's subjective symptom finding is devoid of any analysis and is instead comprised of mere boilerplate that his symptoms are not consistent with the medical evidence. [Filing No. 9 at 22-23.] He also takes issue with the ALJ's description of his treatment, "with the

exception of his pain pump implantation," to be "conservative." [Filing No. 9 at 23-24 (citing Filing No. 7-3 at 11).] On this front, he says it was error for the ALJ to make such a finding without citation to evidence of appropriate, more aggressive treatment and a discussion of whether or not Michael E. could afford such aggressive treatment. [Filing No. 9 at 24-25.]

The Commissioner responds that ALJ properly considered the regulatory factors under SSR 16-3p, including the objective medical evidence, Michael E.'s daily activities, and conservative treatment. [Filing No. 12 at 12.] The Commissioner says this articulation is sufficient to meet the "patently wrong" standard. [Filing No. 12 at 13-14.]

In reply, Michael E. reaffirms his prior arguments and further argues that activities of daily living cannot be equated with full-time work. [Filing No. 13 at 6.]

An ALJ's evaluation of subjective symptoms will be upheld unless it is "patently wrong." *Shidler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012). Nevertheless, the ALJ must provide specific reasons supporting the evaluation that are anchored in the record. *Pepper*, 712 F.3d at 367.

SSR 16-3p addresses the method by which ALJs should "evaluate statements regarding the intensity, persistence, and limiting effects of symptoms in disability claims." SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). Under SSR 16-3p, ALJs use a two-step process to evaluate an individual's subjective symptoms. First, an ALJ must determine whether a claimant has "an underlying medically determinable physical or mental impairment that could reasonably be expected to produce an individual's symptoms." *Id.* at *3.

If the claimant is found to have such a medically determinable impairment at step one, the ALJ moves to step two where the ALJ must consider all of the evidence in the record to evaluate the intensity and persistence of an individual's symptoms and "determine the extent to which an

11

individual's symptoms limit his or her ability to perform work-related activities." *Id.* at *4. To conduct this analysis at the second step, SSR 16-3p instructs as follows:

> In considering the intensity, persistence, and limiting effects of an individual's symptoms, we examine the entire case record, including the objective medical evidence; and individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record.

*Id.* When assessing a claimant's symptom testimony, the ALJ also considers the factors set forth in 20 C.F.R. § 404.1529(c)(3), *i.e.*, (1) a claimant's daily activities, (2) the location, duration, frequency of the pain or other symptoms, (3) precipitating and aggravating factors, (4) the type, dosage, effectiveness, and side effects of any medication, (5) treatment received for relief of pain or other symptoms, (6) measures the claimant uses to relieve pain or other symptoms, and (7) other factors concerning a claimant's functional limitations and restrictions due to pain or other symptoms. *Id.* Ultimately, the ALJ must explain the subjective symptom analysis "in such a way that allows [a court] to determine whether [the ALJ] reached her decision in a rational manner, logically based on her specific findings and the evidence in the record." *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (internal quotations omitted).

Here, the errors described above regarding the analysis (or lack thereof) of Michael E.'s feet impairments also infects the ALJ's subjective-symptom evaluation in which the ALJ concluded that Michael E.'s stated limiting effects of his symptoms (including Michael E.'s testimony that he has difficulty walking and could only stand for 5 or 10 minutes at a time) were not supported by the objective medical evidence. [Filing No. 7-3 at 11.] Because the ALJ failed to address significant evidence related to Michael E.'s feet impairments, the ALJ's assessment is not anchored in the evidence in the record and warrants remand.

Also problematic is the ALJ's conclusion that Michael E.'s treatment has been "conservative," with "the exception of his pain pump implantation," through which Michael E. receives Dilaudid. [Filing No. 7-3 at 11.] Michael E. testified that he administers pain medication twice daily via his intrathecal pain pump. [Filing No. 7-4 at 18-19.] The nature and frequency of treatment sought by a claimant is an appropriate consideration. *See, e.g.*, 20 C.F.R. § 404.1529(c)(3). The problem here is that the ALJ's statement is itself contradictory. The ALJ implicitly acknowledges that the surgical implantation and use of a pain pump is aggressive treatment (by acknowledging it is not conservative) but then says that if you ignore this aggressive treatment, Michael E.'s treatment has been conservative. This logic defect leaves the Court unable to determine that the ALJ reached her conclusion in "a rational manner, logically based on her specific findings." *See Murphy*, 759 F.3d at 816. For this additional reason, the undersigned finds the ALJ's assessment under SSR 16-3p to be patently wrong.

Therefore, the undersigned **RECOMMENDS** that the Court **REVERSE and REMAND** for the ALJ to properly analyze Michael E.'s subjective symptoms in light of all evidence in the record. On remand, the ALJ also should take care to provide a detailed explanation supported by the record that enables the Court to trace the reasoning. *See Deborah M.*, 994 F.3d at 789.

## IV.
### Conclusion

For the reasons detailed above, the undersigned recommends the Court **REVERSE** the Commissioner's decision denying Michael E. benefits and **REMAND** this case for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence 4) as detailed above.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). Failure to file timely

objections within fourteen (14) days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

Date: 1/24/2023

*Mario Garcia*
Mario Garcia
United States Magistrate Judge
Southern District of Indiana

**Distribution via ECF to all counsel of record.**